M. Anderson Berry (SBN 262879)
*aberry@justice4you.com*
Gregory Haroutunian (SBN 330263)
*gharoutunian@justice4you.com*
Brandon P. Jack (SBN 325584)
*bjack@justice4you.com*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829

*Attorneys for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE SAN FRANCISCO 49ERS DATA BREACH LITIGATION**<br><br>This Document Relates To:  All Actions | Case No. 3:22-cv-05138-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>Date:       July 20, 2023<br>Time:       10:00a.m.<br>Courtroom:  11<br>Judge:      Hon. James Donato |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION……………………………………………………………………  2

II.    ISSUES TO BE DECIDED……………………………………………………....  2

III.   STATEMENT OF FACTS AND SUMMARY OF PROPOSED SETTLEMENT……...  2

IV.    SETTLEMENT TERMS………………………………………………………  3

    A.     Settlement Class Definition………………………………………………  3

    B.     Scope of Release………………………………………………………....  4

    C.     Settlement Benefits…………………………………………………....  4

        1.     Relief Under the Settlement………………………………………  4

        2.     Comparison to Full Recovery……………………………………....  5

    D.     Other Cases Affected by the Settlement…………………………………....  8

    E.     Reversion to Defendant………………………………………………  8

V.     NOTICE AND CLAIMS ADMINISTRATION……………………………………....  8

VI.    ATTORNEYS' FEES AND SERVICE AWARDS…………………………………  9

VII.   ARGUMENT……………………………………………………………………  10

    A.  The Court Should Certify the Settlement Class………………………………....  10

    B.     The Proposed Class is Sufficiently Numerous…………………………………  10

    C.     There are Questions of Law and Fact Common to the Class……………………  10

    D.     The Class Representatives' Claims and Defenses are Typical of Those
        They Seek to Represent………………………………………………...  11

    E.     Class Counsel and the Class Representatives are Adequate……………………  12

    F.     Common Questions Predominate, Such That Classwide Resolution is
        Superior to Individual Adjudication……………………………………  12

VIII.  THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
        SETTLEMENT…………………………………………………………  14

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-ii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page**

A.      The Class was Adequately Represented……………………………………………  14

B.      The Settlement was Negotiated at Arm's Length…………………………………..  14

C.      The Settlement Provides Adequate Relief………………………………………….  16

D.      The Settlement Treats Class Members Equitably…………………………………..  19

IX.     THE PROPOSED NOTICE PLAN IS CONSISTENT WITH RULE 23 AND
        DUE PROCESS…………………………………………………………………………  20

X.      CONCLUSION………………………………………………………………………..  22

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-iii-

1
2

# **TABLE OF AUTHORITIES**

3

**Cases**                                                                                                 **Page**

4
5

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997). Notice ........................................................................... 23

6
7

*Amchem Prods. v. Windsor*,
    521 U.S. 5911 (1997)........................................................................... 11, 14

8

*In re Anthem Data Breach*,
    327 F.R.D. 299 (N.D. Cal. 2018)..................................................................... 10, 14

9
10

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ......................................................... 18

11
12

*In re Bluetooth Headset Products Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ......................................................... 16, 17

13
14

*In re Brinker Data Incident Litig.*,
    2021 WL 1405508 (M.D. Fla. Apr. 14, 2021)............................................... 19

15

*Brown v. DirecTV, LLC*,
    562 F. Supp. 3d 590 (C.D. Cal. 2021) .......................................................... 6, 7

16
17

*Community Res. For Indep. Living v. Mobility Works of Cal.*,
    533 F. Supp. 3d 881 (N.D. Cal. 2020) .......................................................... 16

18
19

*Conti v. Am. Honda Motor Co.*,
    2022 U.S. Dist. LEXIS 1561 (C.D. Cal. Jan. 4, 2022) .................................. 16

20
21

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356 (N.D. Cal. 2021)....................................................... 16, 17

22

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 15-CV-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ............. 10

23
24

*In re Facebook Biometric Info. Privacy Litig.*,
    2020 U.S. Dist. LEXIS 151269 (N.D. Cal. Aug. 19, 2020)........................... 15

25
26

*Flores-Mendez v. Zoosk, Inc.*,
    2021 U.S. Dist. LEXIS 18799 (N.D. Cal. Jan. 30, 2021) ............................ 7, 8

27

*Gaston v. Fabfitfun*,
    Case No. 2:20-cv-09534 (C.D. Cal.).............................................................. 10

28

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-iv-

*Grimm v. Am. Eagle Airlines, Inc.*,
    2014 WL 1274376 (C.D. Cal. Sept. 24, 2014) .............................................................................. 19

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) .................................................................................................... 11

*Hartranft v. TVI, Inc.*,
    2019 WL 1746137 (C.D. Cal. Apr. 18, 2019) ............................................................................ 24

*Hashem v. Bosley, Inc.*,
    2022 U.S. Dist. LEXIS 119454 (C.D. Cal. Feb. 22, 2022)...................................................... 11, 12

*Horton v. Cavalry Portfolio Servs., LLC*,
    2020 WL 13327499 (S.D. Cal. Oct. 13, 2020) ............................................................................ 22

*In re Hyundai & Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) (en banc) ...................................................................................... 14

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) ...................................................................................................... 7

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015).................................................................................................. 11

*Loreto v. Gen. Dynamics Info. Tech., Inc.*,
    2021 U.S. Dist. LEXIS 138831 (S.D. Cal. July 26, 2021) ......................................................... 22

*Mandalevy v. Bofi Holding, Inc.*,
    2022 U.S. Dist. LEXIS 89205 (S.D. Cal. Mar. 17, 2022) ......................................................... 22

*In Re Marriott Int. Inc. Customer Data Security Breach Litig.*,
    2022 WL 1396522 (D. Md. May 3, 2022)................................................................................... 19

*Medoff v. Minka Lighting, LLC*,
    2023 U.S. Dist. LEXIS 81398 (C.D. Cal. May 8, 2023) ..................................................... 8, 18, 19

*Mehta v. Robinhood Fin. LLC*,
    2021 U.S. Dist. LEXIS 253782 (N.D. Cal. May 6, 2021) .......................................................... 7, 8

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (2022) ...................................................................................................... 18

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...................................................................................................... 6

*In re MyFord Touch Consumer Litig.*,
    2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019).......................................................... 15

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-v-

*In re Nat'l Collegiate Athletic Ass'n*,
    2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .......................................................... 22

*Norton v. LVNV Funding, LLC*,
    2021 U.S. Dist. LEXIS 138143 (N.D. Cal. July 23, 2021) ...................................... 17

*In re Premera Blue Cross Data Breach*,
    Case No. 3:15-md-02633 (D. Or.) ........................................................................ 10

*Ramirez v. Rite Aid Corp.*,
    2022 U.S. Dist. LEXIS 109069 (C.D. Cal. May 3, 2022) ........................................ 22

*Rodriguez v. W. Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................. 16

*In re San Francisco 49ers Data Breach Litigation*,
    Case No. 2:22-cv-05138-JD (N.D. Cal.) ........................................................... *passim*

*Saucillo v. Peck*,
    25 F.4th 1118 (9th Cir. 2022) ................................................................................. 16

*Schellhorn v Timios, Inc.*,
    No. 2:21-cv-08661 (C.D. Cal.) ............................................................................... 20

*Smith v. Triad of Ala.*,
    2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) ....................................... 19

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................. 18

*Sung v. Schurman Fine Papers*,
    2018 U.S. Dist. LEXIS 40379 (N.D. Cal. Mar. 11, 2018) ............................. 12, 13, 14

*Tarlecki v. Bebe Stores, Inc.*,
    2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) .......................................................... 21

*Toolajian v. Air Methods Corp.*,
    2020 U.S. Dist. LEXIS 250904 (N.D. Cal. Apr. 24, 2020) ................................. 14, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .............................................................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................. 11

*Wilson v. EverBank*,
    2016 U.S. Dist. LEXIS 15751 (S.D. Fla. Feb. 3, 2016) .......................................... 18

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-vi-

*In re Wireless Facilities,*
    253 F.R.D. ................................................................................................. 13

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) .................................................................... 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 20, 2020) .................... 12, 14

**Statutes**

I.C.2 ....................................................................................................... 9, 15, 17

CAL. CIV. CODE § 1798.150(a)(1)(A) .............................................................. 8

California Consumer Protection Act .............................................................. 5

**Other Authorities**

According to the Federal Trade Commission's Identity Theft Survey Report, 85% ............................ 7

FED. R. CIV. P. 23, 2018 ................................................................................ 22

FED. R. CIV. P. 23(c)(2)(B) ...................................................................... 9, 23

FED. R. CIV. P. 23(e)(1)(B) .......................................................................... 22

FED. R. CIV. P. 23(e)(2) ................................................................................ 15

FED. R. CIV. P. 23(e)(2)(B) .......................................................................... 16

FED. R. CIV. P. 23(e)(2)(D) .......................................................................... 21

Federal Rule of Civil Procedure 23 ....................................................... 1, 6, 22

Federal Rule of Civil Procedure 23(b)(3) ............................................... *passim*

https://www.experian.com/blogs/ask-experian/identity-theft-statistics/ (last accessed June 7, 2023) ... 6

Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to
    Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235 (2020) ....................... 19

Rule 23(a)(1) ................................................................................................ 11

Rule 23(a)(2) ................................................................................................ 11

Rule 23(a)(4) ................................................................................................ 13

Rule 23(a)'s ................................................................................................. 11

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-vii-

Rule 23(b)(3), (2) ................................................................................................... 2

Rule 23(b)'s ......................................................................................................... 11

Rule 23(c)(3) ........................................................................................................ 23

Rule 23(e)(2)(A) .................................................................................................. 15

Rule 23(e)(2)(C) .................................................................................................. 18

Rule 23(e)(3) .................................................................................................. 18, 21

4 William Rubenstein, *Newberg on Class Actions*, § 13:7 (5th ed. 2011) .......................................... 17

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-viii-

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on July 20, 2023, at 10:00 AM, or as soon thereafter as counsel may be heard, before the Honorable James Donato, at San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs seek provisional certification of the Settlement Class and California Subclass, appointment of undersigned counsel as Settlement Class Counsel, appointment of the named Plaintiffs in the consolidated actions as Class Representatives, and preliminary approval of the proposed Class Action Settlement.

Plaintiffs base their Motion for Preliminary Approval of Class Action Settlement on: this Notice; the Memorandum of Points and Authorities filed in support thereof; the Settlement Agreement and Release ("Settlement Agreement"); the Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Attorney Decl."); the Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Preliminary Approval ("Fenwick Decl.") all other records and papers on file in this action; any oral argument on the Motion; and all other matters properly before the Court. Plaintiffs seek an order pursuant to Federal Rule of Civil Procedure 23(b)(3) certifying the Settlement Class more fully described in the Settlement Agreement, attached hereto as Exhibit 1; preliminarily approving the Settlement as fair, reasonable, and adequate; directing notice to be disseminated to the Settlement Class in the form and manner proposed by the parties as set forth in the Settlement Agreement and attached to the Settlement Agreement as exhibits A and B thereto; appointing Kroll Settlement Administration LLC to serve as the Settlement Administrator; appointing Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel; and setting a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's forthcoming motion for an award of fees, costs, expenses, and service awards.

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-1-

## I.   INTRODUCTION

Plaintiffs present a proposed class action settlement that would resolve their claims against Defendant 49ers Football Company LLC ("49ers"). In exchange for releasing their claims arising from a 2022 data breach, members of the proposed Settlement Class will be eligible to claim up to $2,000 in reimbursement for documented ordinary expenses or lost time, $7,500 in reimbursement for documented extraordinary expenses such as identity theft, and two years of valuable identity protection services. In addition, members of the proposed California Settlement Subclass are eligible to claim an $85 cash payment, in recognition of their eligibility for statutory damages under California law, which is not available to other class members.

As explained below, Plaintiffs believe that the proposed Settlement is very likely to make whole all class members with actual, out-of-pocket losses. Therefore, Plaintiffs respectfully request that the Court (1) certify the proposed Settlement Class and California Settlement Subclass under Rule 23(b)(3), (2) preliminarily approve the proposed Settlement, and (3) approve the proposed notice plan.

## II.   ISSUES TO BE DECIDED

1.   Whether the Settlement Class and California Subclass should be provisionally certified;

2.   Whether the proposed Class Action Settlement should be preliminarily approved;

3.   Whether notice should issue to the Settlement Class and California Subclass;

4.   Whether the named Plaintiffs in the consolidated actions should be named as Class Representatives, and

5.   Whether undersigned Plaintiffs' Counsel should be appointed as Settlement Class Counsel.

## III.   STATEMENT OF FACTS AND SUMMARY OF PROPOSED SETTLEMENT

This case arises from a ransomware attack involving Defendant's computer systems. Plaintiffs allege that on February 6, 2022, cybercriminals bypassed the 49ers' security systems undetected and accessed PII as part of a "ransomware" attack ("Data Incident"). Plaintiffs further allege that, as a result of the Data Incident, the criminals gained access to Plaintiffs' and "other consumers[']" personal

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-2-

information, including but not limited to name, date of birth, and Social Security Number" (collectively, "PII").

After discovering the Data Incident, the 49ers notified approximately 20,930 individuals of the Data Incident. 49ers offered individuals who also had their social security or driver's license number impacted one year of free credit monitoring.

Individuals, including Plaintiffs, were mailed notices of the Data Incident in or around August 31, 2022 and September 1, 2022. On September 9, 2022, Plaintiff Samantha Donelson filed a lawsuit asserting claims against the 49ers relating to the Data Incident. On December 22, 2022, Plaintiff James Sampson filed a separate lawsuit asserting claims against the 49ers relating to the Data Incident.  On January 10, 2023, Plaintiff Katherine Finch filed a separate lawsuit asserting claims against the 49ers relating to the Data Incident.  On February 23, 2023, the Court consolidated these matters, and on April 4, 2023, Plaintiffs filed the operative amended class-action complaint in the United States District Court for the Northern District of California. The case is titled *In re San Francisco 49ers Data Breach Litigation,* Case No. 2:22-cv-05138-JD (N.D. Cal.) (the "Litigation").

From the onset of the Litigation, and over the course of several months, the Parties engaged in settlement negotiations. The Parties participated in a formal mediation presided over by Bruce Friedman, Esq. on January 23, 2023. As a result of these negotiations and the mediation, the Parties reached a settlement, which is memorialized in this settlement agreement ("Settlement Agreement").

## IV.    SETTLEMENT TERMS

### A.    Settlement Class Definition

The Settlement Class is defined as follows:

> All individuals who were mailed notice by the 49ers that their personal and/or financial information was impacted in a data incident occurring between February 6, 2022 and February 11, 2022.

Settlement Agreement § 1.28 ("S.A."). The following persons are excluded from the class definition: "(i) the 49ers, the Related Entities, and their officers and directors; (ii) all Settlement Class Members

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-3-

who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge." *Id.* The Settlement Class includes 20,930 individuals. *Id.* at p. 1. The California Settlement Subclass includes:

> All persons residing in California who were mailed notification of the Data Incident from the 49ers at a California address.

*Id.* § 1.2.

The proposed Settlement Class and California Settlement Subclass are substantially similar to the class definitions proposed in the First Amended Consolidated Complaint. *See* ECF No. 28, ¶ 78. The only substantive difference is that membership in the settlement classes is limited to individuals whom the 49ers already mailed notice of the data breach. *See id.*

### B.     Scope of Release

Members of the settlement classes who do not opt-out will release "any and all past, present, and future claims" against the 49ers that concern or arise from "the Data Incident and alleged theft of personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in otherwise described in this Litigation." *Id.* § 1.23; *see also id.* § 6.1. This is a standard release, covering only those claims that arise from the data breach.

### C.     Settlement Benefits

#### 1.     Relief Under the Settlement

*Ordinary Expense Reimbursement.* All Settlement Class Members will be eligible to receive a cash payment for up to $2,000 in compensation for lost time or out-of-pocket losses. S.A. § 2.1. This includes reimbursement at $25 per hour (up to four hours) for time spent responding to the data breach, as well as reimbursement for ordinary incidental expenses, such as the cost for purchasing credit reports, identity theft monitoring, or charges for travel and communication expenses. *Id.*

///

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-4-

*Extraordinary Expense Reimbursement.* Settlement Class Members who suffered more serious injuries—such as fraudulent charges or identity theft—are also eligible to claim up to $7,500 in reimbursement. S.A. § 2.2. This ensures that those who were most severely affected by the data breach will have the opportunity to be made whole.

*Additional Cash Payment for California Subclass.* Members of the California Settlement Subclass are also eligible to claim a cash payment of $85. S.A. § 2.4. This additional payment recognizes that these sub-class members had access to claims for statutory damages under the California Consumer Protection Act that were not available to others.

*Identity Theft Protection.* All members of the Settlement Class may also claim two years of identity theft protection services. S.A. § 2.5. This includes dark web monitoring, public persona monitoring, monitoring for high-risk transactions (such as payday loans), and $1 million in identity theft insurance. *Id.* Plaintiffs estimate these services are potentially worth approximately $5.65m to class members. Attorney Decl. ¶ 23, attached hereto as Exhibit 2.

*Business Practice Changes.* The 49ers have or will implement various security-related measures through December 2024 including the creation of a new position, Executive Vice President of Technology to oversee IT operations, hiring a dedicated cyber-security IT professional,  additional mandatory security training for all users within the organization, updates to security training policies, and technical enhancements and updates to password requirements and security monitoring.

### 2.    Comparison to Full Recovery

The settlement benefits compare favorably to the result that Class Members could obtain at trial.

As an initial matter, the Settlement and its claims-made structure reflect the odds that a particular victim of the data breach will suffer the worst-case scenario of fraud or identity theft. According to the Identity Theft Resource Center's 2022 Annual Report, there are over 422 million individual exposures of personal data in the United States.[1] Attorney Decl. ¶ 16. According to Experian, 1.43 million

---

[1] This is greater than the number of people in the United States, as some individuals had their information exposed multiple times.

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-5-

individuals suffered some measure of identity theft in the last year.[2] If every one of those identity thefts was the result of a data breach, then it follows that the odds that a particular exposure of data will result in an identity theft is 0.39 percent. *Id.* Given that there are 20,930 individuals in the Settlement Class here, this estimate suggests that the maximum number of individuals who will suffer identity theft of some kind from the incident at issue is 71. *Id.*

Moreover, a claims-made structure is fair and reasonable in this case because it approximates a possible distribution process following a favorable jury verdict. In the rare case where a class action proceeds to judgment, the defendant has a due process right to contest certain issues that may affect its total liability. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015) ("In all cases, the defendant has a right not to pay in excess of its liability and to present individual defenses, but both rights are protected by other features of the class device and ordinary civil procedure."). Both Rule 23 and due process allow those proceedings to occur in a post-judgment claims administration process before a special master. *See Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021). Courts have suggested that, under some circumstances, this process may need to be conducted on a "claims-made" basis. *Id.* at 604 n.17 (suggesting that this could be required by due process but reserving the issue).

Data breach cases may present a situation where a claims-made process is necessary even in the event of a favorable jury verdict. Plaintiffs assert that all class members necessarily suffered an injury by virtue of the improper disclosure of their PII. *See Mehta v. Robinhood Fin. LLC*, 2021 U.S. Dist. LEXIS 253782, at *19 (N.D. Cal. May 6, 2021) (holding that "Plaintiffs adequately allege damages," including from "loss of control over the use of their identity" and other "privacy injuries"); *Flores-Mendez v. Zoosk, Inc.*, 2021 U.S. Dist. LEXIS 18799, at *11 (N.D. Cal. Jan. 30, 2021) (similar). However, the quantum of their damages is highly variable; some, though not all, will likely suffer varying degrees of lost time, unnecessary expenses, and so forth. This potential issue "of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus.*, 716

---

[2] https://www.experian.com/blogs/ask-experian/identity-theft-statistics/ (last accessed June 7, 2023).

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-6-

F.3d 510, 514 (9th Cir. 2013). What it can do is result in all class members being required to file claims before they can recover. *See Brown*, 562 F. Supp. 3d at 604 n.17. If class members may have been required to file a claim even if they had won at trial, then it is reasonable to structure this Settlement in a manner that approximates such a result.

If Plaintiffs had prevailed at trial, they would have sought recovery for their out-of-pocket losses and the cost of obtaining credit monitoring. Plaintiffs believe that the $2,000 cap for ordinary expenses and $7,500 cap for extraordinary expenses will likely make each class member whole. According to the Federal Trade Commission's Identity Theft Survey Report, 85% of identity theft victims report the misuse of existing accounts and 17% of victims report new accounts being opened in their name. Attorney Decl., ¶ 53. For those identity theft victims who had misuse of existing accounts, the average out-of-pocket loss was $500, while the average loss for improperly opened accounts was $1,200. *Id*. Moreover, only a maximum of 6% of those who had improper use of existing accounts had out-of-pocket losses of $1,000 or above, and 16% of those that had accounts opened in their name had losses of $1,000 or above. *Id*. Thus, while Plaintiffs acknowledge that there could be individuals who would be able to achieve greater recovery if this matter went to trial, the overwhelming number of eligible Class Members will have the opportunity to be made whole by this Settlement.

Had Plaintiffs won a judgment, they also would have sought recovery for their loss of privacy, through statutory damages of $100–$750 for California Settlement Subclass members (CAL. CIV. CODE § 1798.150(a)(1)(A)), or by requesting an award from the jury that compensates the class for the value of their privacy injuries, *see, e.g.*, *Flores-Mendez*, 2021 U.S. Dist. LEXIS 18799, at *11. The cash payment available to California Settlement Subclass members is only $15 lower than the amount that they could have been awarded upon a favorable verdict, which is reasonable given the stage of the litigation. While the Settlement does not provide cash payments for non-California class members' privacy injuries, that fact reflects (1) the difficulty of quantifying such harms in the absence of statutory damages, and (2) the fact that not all California courts agree that this injury may be redressed through a

///

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-7-

negligence action. *See Medoff v. Minka Lighting, LLC*, 2023 U.S. Dist. LEXIS 81398, at *24 n.10 (C.D. Cal. May 8, 2023) (disagreeing with *Florez-Mendez* and *Mehta*).

In light of these complexities and difficulties, the Settlement strikes a balance between providing recovery to those individuals who have suffered concrete harm, while providing some measure of recovery for all class members whose claims, although likely of reduced value, are not valueless.

### D.   Other Cases Affected by the Settlement

Class Counsel is not aware of any other cases affected by the proposed settlement.

### E.   Reversion to Defendant

This is a claims-made settlement. It does not create a common fund. Accordingly, the issue of reversion does not apply here because all settlement funds will be exhausted through the claims process. This method is appropriate under the circumstances because it approximates a probable outcome even in the event of a favorable jury verdict. *See supra,* Part I.C.2.

## V.   NOTICE AND CLAIMS ADMINISTRATION

Defendant will pay for notice, separate and apart from any funds available to Settlement Class Members. S.A. § 2.9. Notice will be given to the Settlement Class via individual notice, which will be given mailing the Short-Form notice (attached to the Settlement Agreement as **Exhibit A**) to postal addresses associated with the Settlement Class Members.

A Long Notice (attached to the Settlement Agreement as **Exhibit B**) will also be posted on the settlement website, along with other important documents such as the Settlement Agreement, a copy of these preliminary approval filings, and the motions for final approval and for attorneys' fees and expenses. S.A. § 3.2(b)(d). The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. FED. R. CIV. P. 23(c)(2)(B).

Furthermore, a toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will be made available to address Class Members' inquiries. S.A, § 3.2(e).

///

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-8-

Kroll Settlement Administration, a nationally recognized and well-regarded class action settlement administrator, has been retained to serve as Claims Administrator, subject to the Court's approval. S.A. § 1.5. The Claims Administrator has estimated that notice and administration costs will total approximately $78,000. Decl. of Scott Fenwick ¶13, Exhibit 3 (Fenwick Decl.). The parties selected Kroll only after soliciting multiple bids. Attorney Decl. ¶ 39.

The Claim Form (attached to the Settlement Agreement as **Exhibit C**) implemented in this case is very similar to that which Class Counsel have used in similar class action settlements involving data breach incidents with relatively similar benefits under a claims-made structure. Attorney Decl. ¶ 34. Class Counsel recommend the content of the Claim Form in this case because of Class Counsel's experience in successfully soliciting claims and allocating settlement benefits in similar class action cases. *Id.*

Class Counsel expects that the claims-rate will be between 1% and 9% (i.e., between 209 and 1,884). This claims-rate would not be unusual for a class settlement. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (noting that consumer class actions typically have a claims rate between 4% and 9%). Nor would it be unusual for data breach settlements. *In re Anthem Data Breach*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (1.8% claims rate); *In re Premera Blue Cross Data Breach*, Case No. 3:15-md-02633 (D. Or.) (7.81% claims rate); *Gaston v. Fabfitfun*, Case No. 2:20-cv-09534 (C.D. Cal.) (5.27% claims rate).

## VI.    ATTORNEYS' FEES AND SERVICE AWARDS

The Settlement also provides that Class Counsel will be paid a cap of $170,000.00 in attorneys' fees, inclusive of any costs and case expenses, and each of the Representative Plaintiffs is eligible to seek a Service Award in the amount of $2,500.00. S.A. §§ 7.2–7.3. These amounts will be paid separate from the Class relief and will not in any way reduce the Class's settlement benefits. S.A. §§ 7.2, 7.5.

Class Counsel's projected attorneys' fees and cost reimbursement request of $170,000.00 will be justified by a Class Counsel's accrued lodestar, which includes the time spent investigating the Data Incident pre-suit, post-suit informal discovery and investigation, extensive settlement negotiations,

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-9-

communicating with Plaintiffs, finalizing the terms of the Settlement Agreement, drafting and filing preliminary approval filings, supplemental filing, this renewed motion for preliminary approval, negotiating enhancements to the settlement, and continuing to communicate with Plaintiffs. Attorney Decl. ¶ 41. Class Counsel anticipate accruing additional lodestar totals to get this case through settlement administration, final approval, and any other hearings the Court may request. *Id.*

## VII.   ARGUMENT

### A.   The Court Should Certify the Settlement Class

The parties have agreed (for settlement purposes only) to certification of the Settlement Class and California Settlement Subclass, *see* S.A. § 2.10, but the Court must still determine whether each of Rule 23(a)'s requirements and at least of Rule 23(b)'s requirements are satisfied. *See Amchem Prods. v. Windsor*, 521 U.S. 5911, 622 (1997). That standard is satisfied here.

### B.   The Proposed Class is Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many individuals "that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). "[W]here the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met." *In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citation omitted). There are 20,930 members of the Settlement Class and approximately 9,620 members of the California Settlement Subclass. S.A. at p. 2. This is well over the threshold to establish numerosity.

### C.   There are Questions of Law and Fact Common to the Class

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(1). This standard may be satisfied by "even a single common question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). Here, the central question raised by the litigation is whether Defendant took reasonable steps to protect the personal information of class members that

---

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-10-

resided in Defendant's systems. That issue depends on the acts and omissions of Defendant and thus is a question common to the class. *See Hashem v. Bosley, Inc.,* 2022 U.S. Dist. LEXIS 119454, at *7 (C.D. Cal. Feb. 22, 2022) (finding commonality where "Plaintiffs maintain that there are multiple common question of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *22 (N.D. Cal. July 20, 2020) (finding commonality in a data breach case, as "[i]n the case's current posture, whether Yahoo employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim."); *Sung v. Schurman Fine Papers*, 2018 U.S. Dist. LEXIS 40379, at *9–10 (N.D. Cal. Mar. 11, 2018) (finding commonality in a data breach case where "[t]he lawsuit involves a single data breach"). Therefore, commonality is satisfied.

###    D.    The Class Representatives' Claims and Defenses are Typical of Those They Seek to Represent

"Typicality requires a showing that the named plaintiffs are members of the class they represent and that their claims are 'reasonably co-extensive with those of absent class members,' but not necessarily 'substantially identical.'" *Hashemi,* 2022 U.S. Dist. LEXIS 119454, at *7 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id*. at *7-8 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal citations omitted)).

As with commonality, typicality is routinely met in data breach cases, as both the class representative and the other members of the class were subject to the same event that gives rise the claims in the case, and thus subject to the same consequences of the allegedly improper data protection. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, at *25 ("the Settlement Class Representatives, like

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-11-

the Settlement Class as a whole, were all Yahoo users who allegedly either suffered identity theft and/or were placed at substantial risk for identity theft. Accordingly, Yahoo's allegedly inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members."); *Sung*, 2018 U.S. Dist. LEXIS 40379, at *10 (finding typicality where "[a]ll Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents."). Similarly, here, the claims of Plaintiffs are the same as those of the other members of the class, as they stem from the same Incident and are the result of the same alleged action (or lack of action) on the part of Defendant.

### E.      Class Counsel and the Class Representatives are Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton*, 327 F.3d at 958). Class Counsel are experienced data privacy litigators with the knowledge to effectively evaluate and prosecute this case. Attorney Decl. ¶ 47. The class representatives diligently represented the class by taking the initiative to commence this litigation, reviewing and approving the pleadings, and staying abreast of developments in the case. Attorney Decl. at ¶ 45. Therefore, adequacy is satisfied.

### F.      Common Questions Predominate, Such That Classwide Resolution is Superior to Individual Adjudication

Certification of a settlement class is proper under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).[3] Both predominance and superiority are satisfied here.

---

[3] Because Plaintiffs seek certification of a settlement class, the Court need not consider manageability concerns. *See Amchem*, 521 U.S. at 619–20; *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc).

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-12-

When evaluating predominance, courts evaluate "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). That test is satisfied here because "Plaintiffs' case for liability depends, first and foremost, on whether [Defendant] used reasonable data security to protect Plaintiffs' personal information." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018). As a result, "the focus" of this case is "on the extent and sufficiency of the specific security measures that [Defendant] employed," which presents "the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* Therefore, predominance is satisfied. *See In re Yahoo!,* 2020 U.S. Dist. LEXIS 129939, at *37–38 (applying same reasoning as *Anthem*); *Sung*, 2018 U.S. Dist. LEXIS 40379, at *11 (finding predominance because "[a]ll claims arise from one data breach, and liability can be determined on a class-wide basis").

Classwide resolution is also superior to individual adjudication. When evaluating superiority, courts ask whether "the aggregation of these claims can be expected to save time, effort and expense, and to promote uniformity without sacrificing procedural fairness," such that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Toolajian v. Air Methods Corp.*, 2020 U.S. Dist. LEXIS 250904, at *17 (N.D. Cal. Apr. 24, 2020) (internal quotation marks and citations omitted). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, [the superiority] factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Here, individual damages are relatively modest, as it is unlikely that many class members suffered significant out-of-pocket losses. *See* Summary of Proposed Settlement, *supra*, Part I.C.2. This makes it unlikely that a class member would retain their own attorney to pursue an individual claim. Moreover, even if class members were to pursue their claims individually, the efficiency gain obtained from having a single resolution of all the common issues dwarfs the benefit of allowing 20,930 individuals to pursue their own cases.

Therefore, the Court should certify the Settlement Class and California Settlement Subclass under Rule 23(b)(3).

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-13-

## VIII.   THE   COURT   SHOULD   PRELIMINARILY   APPROVE   THE   PROPOSED SETTLEMENT

Courts may approve a class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Relevant considerations include whether: (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to one another." *Id.* At the preliminary approval stage, the question is whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Facebook Biometric Info. Privacy Litig.*, 2020 U.S. Dist. LEXIS 151269, at *9 (N.D. Cal. Aug. 19, 2020) (quotation marks omitted). That standard is satisfied here.

### A.     The Class was Adequately Represented

When considering adequacy of representation under Rule 23(e)(2)(A), courts ask two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, at *24 (N.D. Cal. Mar. 28, 2019) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Here, and as discussed above, neither class counsel nor the class representatives have any conflicts of interest. Moreover, class counsel vigorously represented the interests of the class during the mediation and obtained confirmatory discovery to ensure they had sufficient information to evaluate the merits of the case. *See* S.A. § 2.8; *Conti v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 1561, at *24 (C.D. Cal. Jan. 4, 2022) (noting that adequacy may depend on whether class counsel "had an adequate information base" to make an informed decision regarding settlement). This factor weighs in favor of approval.

### B.     The Settlement was Negotiated at Arm's Length

Another important consideration is whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Although this factor does not create a presumption of fairness, *see Saucillo v. Peck*, 25 F.4th 1118, 1132 (9th Cir. 2022), "such negotiations can weigh in favor of approval,"

---

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-14-

*Community Res. For Indep. Living v. Mobility Works of Cal.*, 533 F. Supp. 3d 881, 888 (N.D. Cal. 2020). *See also Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). In this case, the parties' interactions were at all times adversarial. The parties spent considerable time and effort negotiating the settlement, including through private mediation with Bruce Friedman, Esq of JAMS. *See* S.A. at p. 2. They only negotiated attorneys' fees after reaching an agreement on relief for class. S.A. § 7.1. This strongly indicates that there was no collusion. *See Conti*, 2022 U.S. Dist. LEXIS 1561 at *26 (noting that that presence of a mediator suggests negotiations "were conducted in a manner that would protect and further class interests").

When analyzing Rule 23(e)(2)(B), courts also ask whether any of the *Bluetooth* factors are present, which could suggest the presence of collusion. *See Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021) (citing *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)); *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). "These *Bluetooth* factors are (1) when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the payment of attorneys' fees is separate and apart from class funds; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund." *Cottle*, 340 F.R.D. at 376 (quotation marks omitted) (quoting *Briseno*, 998 F.3d at 1023).

Here, while the Settlement does contemplate that Plaintiff's counsel will seek an award of $170,000 separate from the payment to the class, the Settlement is not contingent on any award of fees. S.A. § 7.5. Moreover, the settlement only provides a total of $170,000 in fees split between four firms. S.A. §§ 1.21, 7.2. That modest amount is insufficient to raise the concerns about improper or misaligned incentives that motivate the *Bluetooth* factors. Of course, the Court will ultimately have discretion over the amount of the attorneys' fee award after reviewing Class Counsel's motion.

In addition, this is a claims-made settlement. Although claims-made settlements are not the same as reversionary common funds, they do have some of the same features. *See* 4 William Rubenstein,

---

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-15-

*Newberg on Class Actions*, § 13:7 (5th ed. 2011). Plaintiffs acknowledge that reversionary common funds are disfavored. *See Norton v. LVNV Funding, LLC*, 2021 U.S. Dist. LEXIS 138143, at *30 (N.D. Cal. July 23, 2021) ("A claims-made settlement raises the same concerns as a reversionary agreement and so the third *Bluetooth* factor is present here."). However, for at least two reasons, a claims-made structure is fair and reasonable in this case. First, there is a reasonable possibility that a claims-made process would have been required even if Plaintiffs had won at trial. *See* Summary of Proposed Settlement, *supra*, Part I.C.2. It is fair and reasonable for the settlement structure to track the structure of a plausible post-judgment claims process. Second, the Settlement will very likely make whole any class member who suffered actual out-of-pocket losses as a result of the data breach, which is an excellent result. *See Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *9 (S.D. Fla. Feb. 3, 2016) (noting that a settlement "near-complete relief to class members on a claims-made basis" is an "extraordinary" result).

Therefore, this Settlement was non-collusive and negotiated at arm's length.

### C.    The Settlement Provides Adequate Relief

Rule 23(e)(2)(C) requires courts to consider whether "the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). All of those factors support approval in this case.

*Cost, Risk, and Delay of Trial and Appeal.* While Plaintiffs are confident of the ultimate outcome of the case, they face several challenges going forward.

On the merits, there is considerable disagreement among California courts concerning the law applicable to many of Plaintiffs' claims. For example, many federal courts had held that wasted time is a non-economic injury that may support a negligence claim, *see, e.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019), yet the California Court of Appeal recently suggested in a data

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-16-

breach case that such claims may be barred by the economic loss rule. *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 536 (2022). While *Moore* also suggests that Plaintiffs have a strong claim under the UCL, *see id.* at 527–31, there is some question as to whether Plaintiffs can pursue that claim in federal court. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that plaintiffs may only recover under UCL if they lack an adequate remedy at law). Other examples of uncertainty abound. *See, e.g.*, *Medoff v. Minka Lighting, LLC*, 2023 U.S. Dist. LEXIS 81398, at *24 n.10 (C.D. Cal. May 8, 2023) (noting disagreement with two cases from the district regarding damages element of negligence claim); *id.* at *28 (holding that plaintiffs could satisfy damages element of contract claim by seeking nominal damages, but acknowledging that other courts have disagreed).

Moreover, if they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, 2017 U.S. Dist. LEXIS 38574, at *45–46 (M.D. Ala. Mar. 17, 2017), and more recently in *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiffs' damage calculation. Most recently, class certification was granted in part and denied in part in *In Re Marriott Int. Inc. Customer Data Security Breach Litig.*, 2022 WL 1396522 (D. Md. May 3, 2022) (certifying several classes in a data breach class action). While certification of additional consumer data breach classes may well follow, it still remains a substantial risk for Plaintiffs in this case.

In addition, class certification and summary judgment motions will take, at a minimum, a year to brief, and to obtain rulings from the Court. While summary judgment might have been able to narrow some of the legal questions, it is highly likely that a jury would have to decide whether or not Defendant exercised proper care in protecting its data. This means that a jury trial could be held no earlier than the early portion of 2024. Moreover, at least as of 2020 and to the best of Class Counsel's knowledge, "no

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-17-

data breach case has gone to trial." Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235 (2020). As such, a trial of on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party. This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single plaintiff litigation.

Following the Northern District's Procedural Guidance for Class Action Settlements, Class Counsel compare this settlement to a recent similar settlement where some of them (in addition to other attorneys) participated as counsel for plaintiffs. In *Schellhorn v Timios, Inc.*, No. 2:21-cv-08661 (C.D. Cal.), over roughly 75,000 individuals had their PII compromised in a 2021 data breach. Like this case, *Timios* was resolved on a claims-made basis before a motion to dismiss. The settlement benefits made available to class members in *Timios* are less than those made available here, where California subclass members will get a payment that is nearly double that in *Timios* and all class members will be offered identity theft protection for fifty percent longer was offered in *Timios*. The following chart compares the result of Timios to the proposed settlement here:

| Settlement Terms | *Timios* | *49ers* |
|---|---|---|
| Class Size | 74,755 | 20,930 |
| Out-of-pocket reimbursement for ordinary expenses | $500.00 | $2,000.00 |
| Cash Payment for Lost Time | Up to 3 hours at $20/hour | Up to 4 hours at $25/hour |
| Cash Payment for CCPA Claim | $50.00 | $85.00 |
| Extraordinary Expenses | $3,000.00 | $7,500.00 |
| Class Representative Service Award | $2,500.00 | $2,500.00 |
| Future Identity Protection | 18 months | 24 months |
| Attorneys' Fees & Expense Request | $215,000.00 | $170,000.00 |

United States District Judge Virginia A. Phillips granted preliminary approval of the class action settlement in *Timios* on May 10, 2022 and final approval on November 9, 2022. Because the Settlement forged for Plaintiffs and Class Members here provides Settlement benefits consistent with those that

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-18-

were preliminarily and finally approved in *Timios*, Plaintiffs and the Class respectfully request that the Court grant preliminary approval of class action settlement in this case.

*Distribution Method*. The claims process is simple, straightforward, and equitable. The Claim Form is simple and easy to understand, and it may be submitted in paper or online. *See* Exhibit C; S.A. § 2.3. Class members seeking reimbursement for ordinary or extraordinary losses need only submit reasonable documentation showing that they actually incurred the expenses and that they have a plausible connection to the data breach. S.A. § 2.3. Claimants need not submit any documentation to claim compensation for lost time. *Id.* The only additional documentation required for California Settlement Subclass members seeking to claim an $85 cash payment is a certification that they resided in California when the data breach occurred. S.A. § 2.4. Any disputes over the validity of a claim will be resolved by a neutral referee. S.A. § 2.6. The claim process is necessary to ensure that claimants are Settlement Class Members. The claims process is also consumer friendly, since the claim can be filed using paper or electronically. Agr. § 9.04.

*Attorney's Fees*. Class Counsel intend to request an award of up to $170,000.00. S.A. § 7.2. This amount was negotiated only after the substantive terms of the Settlement were agreed upon, and the Settlement is not contingent upon an award of fees. *See* S.A. §§ 7.1, 7.5; *Tarlecki v. Bebe Stores, Inc.*, 2009 WL 3720872, at *2 (N.D. Cal. Nov. 3, 2009) (noting that "the approval of the settlement agreement as a whole does not depend on the quantum of the fees"). Class Counsel submits that this request is reasonable under the percentage method and when cross-checked against their lodestar. Class Counsel will address their potential fees in a separate motion that substantiates the reasonableness of their requests.

*Rule 23(e)(3) Agreement*. The Parties did not make any side agreements subject to disclosure under FED. R. CIV. P. 23(e)(3).

### D.    The Settlement Treats Class Members Equitably

When considering whether the settlement "treats class members equitably relative to each other," FED. R. CIV. P. 23(e)(2)(D), courts seek "to ensure that similarly situated class members are treated

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-19-

similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated," *Mandalevy v. Bofi Holding, Inc.*, 2022 U.S. Dist. LEXIS 89205, *28 (S.D. Cal. Mar. 17, 2022) (quoting 4 William Rubenstein, *Newberg on Class Actions* § 13:56 (5th ed. 2020)). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23, 2018 advisory committee note.

The Settlement recognizes that California Settlement Subclass members had claims for statutory damages not available to class members in other states, and thus provides them the opportunity to claim an $85 cash payment in recognition of the relative strength of their claims. S.A. § 2.4. This is precisely the type of difference that settlements must take into account. *See Loreto v. Gen. Dynamics Info. Tech., Inc.*, 2021 U.S. Dist. LEXIS 138831, *24–26 (S.D. Cal. July 26, 2021) (approving settlement that treated class members differently based on genuine differences between the strength of their claims).

In addition, each class representative will request a $2,500 service award. S.A. § 7.3. "Class representative service awards are well-established as legitimate in the Ninth Circuit." *Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069, *21 (C.D. Cal. May 3, 2022). A service award of $2,500 is reasonable and in line with awards approved by federal courts in California. *See, e.g.*, *In re Nat'l Collegiate Athletic Ass'n*, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (approving $20,000 service awards to each class representative and collecting cases approving similar awards); *Horton v. Cavalry Portfolio Servs., LLC*, 2020 WL 13327499, at *1 (S.D. Cal. Oct. 13, 2020) ($10,000 service award).

## IX. THE PROPOSED NOTICE PLAN IS CONSISTENT WITH RULE 23 AND DUE PROCESS

If the court determines that it will "likely be able to" approve the settlement, it must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. FED. R. CIV. P. 23(e)(1)(B). Class members are entitled to the "best notice that is practicable under the

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-20-

circumstances" of any proposed settlement before it is finally approved by the Court. FED. R. CIV. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). FED. R. CIV. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Toolajian*, 2020 U.S. Dist. LEXIS 250904, at *31 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citation omitted).

Here, and after a competitive bidding process, the parties have agreed to a robust notice program to be administered by Kroll, a well-respected third-party class administrator that will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via email or mail. *See* S.A. § 1.5; Attorney Decl. ¶ 39 (describing bidding process). The costs of administering the Settlement will be paid by Defendant and will not negatively impact the amount available to Settlement Class Members who make valid claims. S.A. § 2.9. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *See* S.A. Exhibits A, B, and C.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the Settlement

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-21-

1  Agreement. S.A. § 3.2(b). The Claims Administrator will also make a toll-free help line staffed with a

2  reasonable number of live operators available to provide Settlement Class Members with additional

3  information about the settlement. S.A. § 3.2(e).

4     Because the notice plan ensures that Settlement Class Members' due process rights are amply

5  protected, this Court should approve it. *See Hartranft v. TVI, Inc.*, 2019 WL 1746137, at *3 (C.D. Cal.

6  Apr. 18, 2019).

7  **X.      CONCLUSION**

8     The Court should (1) certify the Settlement Class and California Settlement Subclass, (2)

9  preliminarily approve the proposed settlement, and (3) approve the proposed notice plan.

10  Dated: June 8, 2023                    Respectfully submitted,

11

12                              By:*/s/ M. Anderson Berry*
                                   M. Anderson Berry (SBN 262879)
13                                  Gregory Haroutunian (SBN 330263)
                                   **CLAYEO C. ARNOLD**
14                                  **A PROFESSIONAL CORPORATION**
                                   865 Howe Avenue
15                                  Sacramento, CA 95825
                                   Telephone: (916)239-4778
16                                  aberry@justice4you.com
                                   gharoutunian@justice4you.com
17

18                                  Matthew R. Wilson (SBN 290473)
                                   Michael J. Boyle, Jr. (SBN 258560)
19                                  **MEYER WILSON CO., LPA**
                                   305 W. Nationwide Boulevard
20                                  Columbus, OH 43215
                                   Telephone: (614) 224-6000
21                                  mwilson@meyerwilson.com
                                   mboyle@meyerwilson.com
22

23                                  John J. Nelson (SBN 317598)
24                                  **MILBERG COLEMAN BRYSON**
                                   **PHILLIPS GROSSMAN, PLLC**
25                                  401 W. Broadway, Suite 1760
                                   San Diego, California 92101
26                                  Telephone: (858) 209-6941
                                   jnelson@milberg.com
27

28                                  *Counsel for Consolidated Plaintiffs and the Putative Class*

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-05138-JD

-22-